UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-404-GWU

MARTY MOSES, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Marty Moses brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not

form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Moses, a 47-year-old former heavy equipment operator with a high school education, suffered from impairments related to degenerative disc disease (being status post L3-L4

laminectomy) and coronary artery disease (being status post stent placement). (Tr. 19, 22). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 24). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 26). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 25).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to light level work along with such non-exertional restrictions as (1) a need to avoid exposure to temperature extremes; (2) an inability to more than occasionally stoop, kneel, crouch, crawl and climb ladders, ropes or scaffolds; (3) the need for a sit/stand option at 30-minute intervals; (4) an inability to more than occasionally reach overhead with the left arm; and (5) no more than occasionally performing fine manipulation or gripping. (Tr. 428). In response, the witness identified a significant number of jobs which could still be performed. (Id.). The ALJ later reduced the exertional level to sedentary and added a need to avoid jobs requiring driving as well as a "limited but satisfactory" ability in such areas as

maintaining attention and concentration and dealing with work stresses.  (Id.).  The witness again identified a significant number of jobs as remaining available.  (Tr. 428-429).  Therefore, assuming that the vocational factors considered by Ellis fairly characterized Moses' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

    The hypothetical question fairly depicted Moses' condition as required by <u>Varley</u>.  Dr. John Johnson examined the plaintiff and noted history of back and left hand injury, osteopenia, high blood pressure, arthritis in the hands and back, and thyroid problems.  (Tr. 244).  Dr. Johnson reviewed testing results such as a CT Scan of the abdomen which showed hepatic steatosis, lumbar spine x-rays which revealed L3-L4 disc space narrowing, a persantine stress test which revealed no ischemia and an endoscopy which revealed mild reflux disease with no ulcer or erosive gastritis.  (Tr. 245). Cardiac rhythm was regular and the heart sounds were normal upon physical examination.  (Id.).  Range of motion was normal in the neck.  (Id.).  Muscle bulk and tone were normal and there was no atrophy.  (Tr. 246).  Range of motion was normal in the back, hips, shoulders, elbows, wrists, fingers, knees and ankles.  (Id.).  The claimant was said to have a good grip even with the left hand. (Id.).  Dr. Johnson reported a diagnostic impression of status post lumbar

07-404 Marty Moses

discectomy,[1] a gunshot wound to the left hand,[2] treated hypertension, a non-functioning gallbladder, and hypothyroidism. (Id.). The doctor imposed no physical limitations upon Moses including such activities as hearing, seeing, speaking, moving about or manipulating objects. (Id.). The ALJ's findings were compatible with this opinion.

    Dr. James Ramsey reviewed the record and opined that Moses would be able to lift a maximum of 50 pounds and 25 pounds frequently. (Tr. 375). Dr. Ramsey also indicated that the plaintiff would be limited to no more than occasionally climbing ladders, ropes or scaffolds, stooping, kneeling, crouching and crawling. (Tr. 376). The doctor also reported that the claimant should avoid concentrated exposure to extreme cold and heat. (Tr. 378). Dr. Ramsey indicated that the reason for his somewhat more severe limitations than those found initially was the fact that Moses had recently undergone heart catheterization with stent placement. (Tr. 375). However, the plaintiff did not seem to require more than medical management at the present time. (Tr. 376). The ALJ's findings were consistent with these restrictions.

---

[1] The surgery took place in February of 1982. (Tr. 207-220). The alleged onset date is July 31, 2002. (Tr. 19).

[2] The plaintiff suffered this injury in June of 1997. (Tr. 120-200).

Such treating and examining sources as the staff at the Baptist Regional Medical Center (Tr. 232-236), the staff at the Heart Doctors (Tr. 239-243), the staff at the Marymount Medical Center (Tr. 250-273), the staff at the Knox County Hospital (Tr. 274-337), Dr. Anne Constantino (Tr. 404-409), and the staff at Medical Specialists of Kentucky (Tr. 410-412) did not report the existence of more severe physical restrictions than those found by the ALJ.  These as well as the aforementioned medical reports provide substantial evidence to support the administrative decision.

Dr. David Jackson examined Moses and opined that as a result of his chronic back pain, the plaintiff would be permanently restricted from ever bending or lifting and would have difficulty even sitting or standing.  (Tr. 341).  The doctor also noted that due to the claimant's heart problems, he should avoid "strenuous activity." (Tr. 342).  The light and sedentary level jobs cited by the vocational expert are arguably compatible with the physician's limitation concerning "strenuous activity."  The ALJ noted a number of reasons why Dr. Jackson's opinion was not entitled to controlling weight, including his lack of physical findings, and the contradictory findings of other medical sources such as Dr. Johnson, and the examiner's rating of only a 12 percent impairment to the whole body for Worker's Compensation purposes (Id.) despite indicating totally disabling restrictions (Tr. 23).  As a one-time examiner, Dr. Jackson's opinion was offset by that of the equally-placed Dr. Johnson as well as

the opinions of the medical reviewers. Therefore, the ALJ properly rejected this opinion as binding.

Moses also argues that the ALJ erred in rejecting the opinions of Dr. William Brooks (Tr. 339) and Dr. Raju Vora (Tr. 413). Neither Dr. Brooks nor Dr. Vora identified specific functional restrictions but merely stated that the plaintiff was disabled.[3] The administrative regulations provide that a medical source's statement that you are disabled is not binding because this is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1). Dr. Brooks was only a one-time examiner and, so, his opinion would also be offset by that of Dr. Johnson. Dr. Vora did not list specific findings on examination. The ALJ noted a number of reasons why Dr. Vora's opinion was not well-supported by objective medical data such as recent x-rays showing only minimal degenerative changes in the lumbar spine. (Tr. 23). Therefore, the court finds no error.

Moses also argues that the ALJ did not properly evaluate his subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there

---

[3]Dr. Brooks wrote that he would "support his claim for disability," but then added "I don't think he is going to be able to do the work that he did previously that is working in heavy construction." (Tr. 339). This suggests that the physician was not ruling out lighter work activity.

11

must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Moses was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called <u>Duncan</u> test, the claimant does not meet either of the alternative second prongs.  Dr. Johnson noted a full range of back motion and no muscle weakness, muscle atrophy or reflex abnormality.  (Tr. 246).  Dr. Brooks reported finding no weakness, sensory loss, or reflex asymmetry.  (Tr. 338).  A CT Scan of the chest was normal in March of 2006.  (Tr. 270).  An x-ray of the lumbar spine in March of 2006 revealed only minimal changes at L4-L5 with no neural foramina or spinal canal stenosis.  (Tr. 404).  An x-ray of the thoracic spine was said to be essentially normal.  (Tr. 405).  An x-ray of the cervical spine showed minimally tight neural foramens at C5-C6 and C6-C7 but was otherwise a normal study.  (Tr. 406).  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated the pain complaints of Moses.

Finally, Moses asserts that the ALJ erred in failing to give proper consideration to the combined effect of all of his impairments.  However, the

07-404 Marty Moses

undersigned has already determined that the hypothetical factors considered by the vocational expert fairly depicted his condition. Therefore, the ALJ implicitly considered all the relevant impairments in proper combination.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 27th day of August, 2008.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**